TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN




NO. 03-04-00726-CR




Tracy Morgan Dantzler, Appellant

v.

The State of Texas, Appellee





FROM THE DISTRICT COURT OF BURNET COUNTY, 33RD JUDICIAL DISTRICT
NO. 30329, HONORABLE GUILFORD L. JONES III, JUDGE PRESIDING




M E M O R A N D U M O P I N I O N


                        A jury convicted Tracy Morgan Dantzler of possessing and manufacturing
methamphetamine in an amount of 400 grams or more, and assessed his punishment at confinement
for 20 years and a probated fine. See Tex. Health & Safety Code Ann. §§ 481.112, .115 (West
2003). In eight issues, appellant challenges the legal and factual sufficiency of the evidence
supporting his conviction, and further contends that (i) the trial court erred in denying appellant’s
challenge for cause as to an objectionable juror, (ii) the State improperly injected evidence outside
the record, and (iii) the statute under which appellant was convicted is impermissibly overbroad and
vague as to deprive him of due process and equal protection under both the Texas and United States
constitutions. We affirm the judgment of conviction.
 
FACTUAL BACKGROUND
                        Law enforcement officers of the Burnet County Sheriff’s Office responded to a report
on February 19, 2004, that a runaway juvenile could be found at appellant’s residence located at the
end of a county road in Burnet County. At trial, the officers testified that they arrived at the property
after dark. An unlocked gate contained warning signs of “no trespassing,” “private property,” and
“keep out.” Deputy Dean Golman of the Burnet County Sheriff’s Office described the entrance to
the property as having a long drive before the gate, followed by a heavily wooded area after the gate
leading to a circular drive. On the property, the officers observed a mobile home, an Airstream
travel trailer, a locked storage facility, and a motor home located further down a trail. Sergeant Brent
Nichols testified that the perimeter of the property was fenced. A neighbor testified that appellant
lived on a fenced property at the last gate at the end of a county road in Burnet County. Although
she had seen other cars going past her house toward appellant’s residence, to her knowledge no one
else lived on the property.
                        The State’s evidence at trial showed that when Golman, Chief Deputy Rick Allen,
and another deputy arrived at the property they saw a male youth entering the Airstream trailer. One
of the officers knocked on the door of the trailer but no one answered. Allen sent one of the officers
to the mobile home to ask for their help in locating the runaway juvenile. Appellant and a woman
with a young child were in the mobile home. The woman gave permission for the officers to enter
the trailer to look for the runaway. While inside the mobile home, the officers detected the odor of
cooked methamphetamine and observed appellant lying on the couch and unable to stand.
                        One of the officers entered the Airstream trailer and found two juveniles: appellant’s
son and the runaway juvenile. As the officers located the juvenile, they observed a video
surveillance camera in front of the motor home, an illuminated screen inside the home that was
displaying the image from the mounted camera, and a light on inside the motor home. They
observed an extension cord running from the mobile home through the woods to the motor home,
and another that led out to the surveillance camera. The cords were visible on the ground. Golman
testified that the camera was set up to capture images over the tree tops. The motor home was
located some distance down a trail and neither the motor home nor the surveillance camera were
visible from the vicinity of the mobile home. The officers detected a strong odor of
methamphetamine emanating from the motor home.
                        The officers removed the juvenile from the trailer and returned to the mobile home. 
Based upon their observations, the officers secured the premises and obtained a search warrant for
the motor home. According to the testimony at trial, members of the narcotics enforcement team
arrived after midnight to execute the search warrant. The narcotics officers discovered the
“components of a fully operational clandestine methamphetamine laboratory” inside the motor home. 
They videotaped and photographed the interior of the trailer and seized numerous items.
                        At trial, Deputies Allen and Golman testified about their initial investigation. Three
members of the narcotics enforcement team also testified about the execution of the search warrant
and the evidence videotaped, photographed, and seized. A chemist from the Department of Public
Safety testified that the officers seized methamphetamine weighing 535.97 grams. After a four-day
trial, the jury convicted appellant of possession and manufacture of methamphetamine.
ANALYSIS
Legal and Factual Sufficiency
                        In his first four issues, appellant challenges the legal and factual sufficiency of the
evidence to sustain his conviction for possession and manufacture of methamphetamine. 
Specifically, appellant contends that his nearby presence in the mobile home and the court’s failure
to include a charge on parties are insufficient to affirmatively link him to the manufacture of, or the
custody or control of, the methamphetamine.
                        In a legal sufficiency review, we look at the relevant evidence in the light most
favorable to the verdict and determine whether a rational finder of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979);
Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The evidence, viewed in this light, and
all reasonable inferences drawn therefrom, are evaluated in this review. Alvarado v. State, 912
S.W.2d 199, 207 (Tex. Crim. App. 1995). The trier of fact is entitled to resolve any conflicts in the
evidence, to evaluate the credibility of witnesses, and to determine the weight to be given any
particular evidence. See Jones v. State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). Any
inconsistencies in the evidence should be resolved in favor of the verdict. Moreno v. State, 755
S.W.2d 866, 867 (Tex. Crim. App. 1988). This standard of review is the same for both direct and
circumstantial evidence. Green v. State, 840 S.W.2d 394, 401 (Tex. Crim. App. 1992).
                        Factual sufficiency requires the reviewing court to view the evidence “without the
prism of ‘in the light most favorable to the prosecution.’” Clewis v. State, 922 S.W.2d 126, 129
(Tex. Crim. App. 1996). There are two prongs to a factual sufficiency review: the reviewing court
must ask (i) whether the State’s evidence, taken alone, is so weak that it renders the adverse finding
clearly wrong or manifestly unjust; and (ii) whether the proof of guilt, although adequate if taken
alone, is against the great weight and preponderance of the evidence. Zuniga v. State, 144 S.W.3d
477, 484-85 (Tex. Crim. App. 2004); Zuliani v. State, 97 S.W.3d 589, 593-94 (Tex. Crim. App.
2003); Johnson, 23 S.W.3d at 11. A factual sufficiency review must employ appropriate deference
to the fact finder’s role as the sole judge of the weight and credibility to be given to witness
testimony. Johnson, 23 S.W.3d at 7. A verdict will be set aside “only if the evidence supporting
guilt is so obviously weak, or the contrary evidence so overwhelmingly outweighs the supporting
evidence, as to render the conviction clearly wrong and manifestly unjust.” Ortiz v. State, 93 S.W.3d
79, 87 (Tex. Crim. App. 2002).
                        To obtain a conviction based on the indictment in this case, the State was required
to prove that appellant knowingly manufactured methamphetamine in an amount of more than 400
grams, including adulterants and dilutants. See Tex. Heath & Safety Code Ann. §§ 481.112, .115. 
As to possession, the State had to prove that appellant exercised care, control, and management over
the contraband and that he knew the substance was contraband. Martin v. State, 753 S.W.2d 384,
387 (Tex. Crim. App. 1988). Possession need not be exclusive, but when more than one person
exercises control over the contraband, some affirmative link must exist between the accused and the
contraband. McGoldrick v. State, 682 S.W.2d 573, 578 (Tex. Crim. App. 1985).
                        Both manufacture and possession can be established through circumstantial evidence. 
Id. Although mere presence is insufficient to support a conviction, it is a circumstance tending to
prove guilt that, when combined with other facts, shows that the accused was a participant in the
manufacturing. The State may demonstrate that affirmative links exist between the accused and the
contraband through circumstantial evidence such as the amount found, its location in relationship
to appellant’s personal belongings, appellant’s relationship to the premises, appellant’s conduct with
respect to the contraband, and the proximity of appellant to the contraband. See Earvin v. State, 632
S.W.2d 920, 924 (Tex. Crim. App. 1982); Pollan v. State, 612 S.W.2d 594, 596 (Tex. Crim. App.
1981); Brown v. State, 757 S.W.2d 828, 829 (Tex. App.—Waco 1988, pet. ref’d) (appellant’s motor
home proximity to methamphetamine laboratory, provision of electricity to laboratory, possession
of base chemicals for methamphetamine manufacture and presence of strong odor of
methamphetamine supported conviction for methamphetamine manufacturing).
                        Members of the narcotic enforcement team videotaped and photographed the interior
and exterior of the motor home; these exhibits were admitted into evidence. Sergeant David Laine,
who executed the search warrant along with other members of the narcotics enforcement team,
testified that the officers found the “components of a fully operational clandestine methamphetamine
laboratory” inside the motor home. The officers seized various items of equipment and numerous
containers of liquids. They also observed common items found at the scene that were consistent with
use in the manufacture of methamphetamine. Laine described the corrosiveness and toxicity of the
chemicals and their effect on items in the motor home. He identified acids and iodine as precursor
chemicals used in the manufacture of methamphetamine. The officers also seized numerous
glassware items consistent with the manufacturing process. Laine explained how coffee pots are
regularly used in the process and how the pots melt, deteriorate, and become discolored from the
chemicals. Laine testified that the officers took approximately two and a half hours to process the
motor home. Sergeant Nichols, the officer who had walked the perimeter of the property, testified
that he observed a couple of burn piles between the mobile home and the motor home that contained
acetone cans, a substance used in the manufacture of methamphetamine.
                        In this case, there was ample evidence to show that appellant was a participant in both
the possession and manufacturing of methamphetamine. Although appellant disputes that the State
showed that the premises were linked to him, the evidence showed that appellant resided on the
property where the “fully operational clandestine methamphetamine laboratory” was located and that
he exercised control over the property. The property was secluded, surrounded on all sides by a
fence, and gated with warnings to exclude others. The mobile home, evidently appellant’s primary
residence, provided power through an extension cord linked with the motor home where the
laboratory was found. Although the motor home was located some distance from the mobile home,
it was located on the same property and linked by the power line. A surveillance camera held in
place by guide wires allowed anyone in the motor home to see across the wooded areas and detect
anyone entering the property. The motor home was inoperable and in deteriorating condition,
appearing to have been in its location for a long period of time.
                        Appellant’s link with the lab was demonstrated in another manner. On the night in
question, when the officers first encountered appellant, they detected that appellant and his residence
smelled strongly of a methamphetamine-like chemical odor that is consistent with the cooking or
manufacturing of methamphetamine. Deputies Allen and Golman both testified that appellant’s
physical condition was consistent with use of the drug, and that he appeared to have “crashed” due
to the exhaustion and fatigue resulting from extended use. Allen testified that appellant “was
hurting.” In response to questioning on cross-examination that appellant might have the flu, Allen
said that appellant said he was ill and might have said he had the flu.
                        Although an individual’s mere presence at the scene of a drug laboratory is
insufficient to support a conviction for drug manufacturing or possession, it is a circumstance
tending to prove guilt that, when combined with other facts, shows that the accused was a participant
in the manufacturing or had custody and control sufficient for possession. In this case, the fact that
the drug laboratory was on appellant’s premises, that he resided in the nearby mobile home, that the
laboratory was linked to appellant’s residence by the power line, that chemical receptacles and burn
piles were located on the property, and that both appellant and the residence smelled of the
distinctive methamphetamine odor are sufficient to establish his guilt. There was other evidence
from which a reasonable juror could have determined that appellant was in possession and control
of the premises, that he resided there, and that he was involved in the manufacture of the
methamphetamine found at that location.
                        Although no direct evidence shows appellant was present when the manufacturing
occurred or that he knew there was methamphetamine in the motor home, viewing this evidence
under the appropriate standards, we conclude that the jury could rationally infer and find beyond a
reasonable doubt that appellant possessed and manufactured methamphetamine. Likewise, the
conviction is not so against the great weight of the evidence as to be manifestly wrong and unjust. 
The evidence is both legally and factually sufficient to support the conviction.
                        Appellant complains that the trial court failed to give a charge on the law of parties. 
Texas law provides that a person is criminally responsible as a party to an offense if the offense is
committed by his own conduct, by the conduct of another for which he is criminally responsible, or
by both. Tex. Pen. Code Ann. § 7.01(a) (West 2003). Moreover, a person is criminally responsible
for an offense committed by the conduct of another if, acting with intent to promote or assist the
commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person
to commit the offense. Id. § 7.02(a)(2) (West 2003). For a person to be guilty under the law of
parties, the State must first prove the guilt of another as the primary actor. Richardson v. State, 879
S.W.2d 874, 882 (Tex. Crim. App. 1993). The court’s charge did not include an instruction on the
law of parties. Because the State did not rely on the law of parties, it assumed the burden of showing
that appellant was the principle actor. As discussed above, there was legally sufficient evidence for
the jury to find that appellant knowingly or intentionally possessed and manufactured
methamphetamine. Because there was evidence from which a jury could reasonably conclude that
appellant was guilty as a principle, it was not necessary for the State to rely on the law of parties to
convict him.
                        We overrule appellant’s first four issues.

Challenge for Cause 
                        In his fifth issue on appeal, appellant argues that the trial court erred when it refused
to grant his challenge for cause “requiring him to accept an objectionable juror.” Specifically,
appellant contends that he was forced to use a peremptory challenge when the trial court denied his
challenges for cause and his request for three additional peremptory challenges. The State responds
that the trial court did not abuse its discretion because, although the two venire members initially
expressed reservations about the presumption of innocence, these jurors were not shown to be biased
against the law on the presumption, and the trial court did not abuse its discretion in overruling the
challenges for cause.
                        A defendant may properly challenge any prospective juror who demonstrates a bias
or prejudice against any of the law applicable to the case on which the defendant is entitled to rely. 
See Tex. Code Crim. Proc. Ann. art. 35.16(c)(2) (West Supp. 2005). We review a trial court’s
decision to deny a party’s challenge for cause for an abuse of discretion. Swearingen v. State, 101
S.W.3d 89, 98 (Tex. Crim. App. 2003); Curry v. State, 910 S.W.2d 490, 492 (Tex. Crim. App.
1995). We review a trial court’s decision in light of the venire member’s voir dire testimony as a
whole. Swearingen, 101 S.W.3d at 99; see Patrick v. State, 906 S.W.2d 481, 488 (Tex. Crim. App.
1995). When the record does not contain a clearly objectionable declaration by the venire member,
or the record demonstrates a vacillating or equivocal venire member, we accord great deference to
the trial judge who had the better opportunity to see and hear the person. Swearingen, 101 S.W.3d
at 99; Garcia v. State, 887 S.W.2d 846, 854 (Tex. Crim. App. 1994). 
                        To preserve error on denied challenges for cause, the appellant must demonstrate on
the record that (i) he asserted a clear and specific challenge for cause; (ii) he used a peremptory
challenge on the complained-of venire member; (iii) all of his peremptory challenges were
exhausted; (iv) his request for additional strikes was denied; and (v) an objectionable juror sat on the
jury. Feldman v. State, 71 S.W.3d 738, 744 (Tex. Crim. App. 2002). The record in this case reflects
that appellant exhausted all of his peremptory challenges, and then requested, but was denied, further
challenges. After appellant’s requests for additional peremptory strikes were denied, he accepted
a juror he deemed objectionable, thereby preserving error for review on appeal. See id.
                        To determine if a prospective juror should be excused for cause due to a bias or
prejudice against a phase of the law upon which the defendant is entitled to rely, “[t]he test is
whether the bias or prejudice would substantially impair the prospective juror’s ability to carry out
his oath and instructions in accordance with the law.” Id. The law must be explained to the
prospective juror and the juror must be asked whether he can follow that law regardless of her
personal view before the juror can be excused for cause on this basis. Id. The burden is on the
proponent of a challenge for cause to establish his challenge is proper. Id. at 747.
                        Appellant’s challenge appears to focus on three jurors. As to venire person Harned,
appellant fails to include any record references to objectionable responses. As to venire persons
Cummings and Schmidt, appellant objected that they demonstrated that they would not apply a
presumption of innocence. Our review of the record shows that during voir dire, appellant’s counsel
asked, “Is there anybody who agrees with [venire member Dickens] that the fact that Mr. Dantzler
has been indicted and charged–that there’s probably something going on? Anybody who agrees with
that?” Nineteen venire members raised their hands, including Cummings and Schmidt, numbers 10
and 18. Counsel continued, “Of all those who just had their cards up, the next question is that mind
set, would that maybe affect you in applying the presumption of innocence to Mr. Dantzler or in
applying the law that the state is required to prove each and every element of the offense charged
beyond a reasonable doubt?” Sixteen persons raised their hands, including Cummings and Schmidt. 
In response to more specific questions, at least two jurors expressly agreed that they could follow
the charge in the case. Cummings and several other jurors then agreed with that proposition.
                        When a venire member expressed confusion as to whether a follow-up question was
a different one than defense counsel had previously asked, counsel repeated the nature of his concern
regarding the presumption of innocence. The court then intervened:

Counsel, I’m going to rephrase your last inquiry just a little bit. The inquiry is this:
If the court instructs you that you must presume the defendant innocent, and that the
state has the burden to prove each and every element beyond a reasonable doubt, if
you’re charged with that, among other legal matters by the Court, if you get back
there and you have this feeling that [counsel] has been talking about that, quote,
something must have been going on, unquote, can you nevertheless set that feeling
aside and follow the law? Now is there anybody who, even though they might have
that feeling, cannot follow the law as given to it by the Court?
 
 
Three venire members raised their hands. Counsel continued questioning the venire members who
had originally raised their hands as well as others. When counsel included Schmidt among those
who had raised their hands, she said, “No, I didn’t have my card up.”
                        The court allowed defense counsel to inquire and explain the concept of presumption
of innocence. The court then clarified the questioning in response to juror confusion. Later, when
the court excused jurors for cause, the court excused three venire members who had expressed
concerns about applying the presumption of innocence. There was no basis for the challenges to the
other venire members now sought by appellant. Specifically, the two venire members appellant now
challenges were not among those who continued to express a concern about the presumption; rather,
they did not raise their hands following the clarification by the court and continued inquiry by
defense counsel. After the two jurors indicated by their silence that they could follow the law, the
trial court properly exercised its discretion in denying the challenges for cause. We overrule
appellant’s fifth issue on appeal.

Improper Final Argument
                        In his sixth issue, appellant argues that evidence not in the record was improperly
injected into the State’s final argument. The complained-of statement occurred as the prosecutor
characterized the testimony of Sergeant Nichols. Arguing that appellant was sufficiently alert at
various times to respond to the officers, the State argued,

Sergeant Nichols explained that he talked to him to find out if there were other
hazardous, or booby traps, or anything that should be made known to him about
safety matters down at that motor home. Do you recall that, Ladies and Gentlemen? 
He also testified that he got some input. Remember. The instruction was clear. 
Don’t tell us what he might have said. Did you get some information? The
testimony was yes.
 
 
Defense counsel then objected and requested a mistrial, stating that there was no testimony
concerning whether Nichols got some information, but only that appellant “raised an eye.” The court
then instructed the jury that this was argument of counsel and that their recollection of the evidence
controlled. During its deliberations, the jury sent a note to the court advising that they disagreed “as
to the testimony of Officer Nichols” and “as to whether there was any response.” Because the jury
inquired about this testimony, appellant urges that this demonstrated harm.
                        The testimony at issue occurred during the direct examination of Sergeant Nichols
as he described the evidence that led the officers to request a search warrant and to secure the
premises in preparation for a possible search. Nichols described the physical characteristics of
methamphetamine users and then described appellant’s characteristics that manifested those
characteristics: “He was thin in nature, his face was drawn, his eyes were recessed due to lack of
fluids or lack of sleep one, and he was quite difficult to arouse and answer from while he was laying
on the couch.”
                        By agreement of the parties, the relevant testimony was read to the jury:
 
Q.   Why were you trying to talk to him?
 
A.   I needed to speak with Mr. Dantzler to see if there was anything that he could
tell me that was in the motor home that would possible injury some of my
personnel. That included booby traps or anything of that nature.
 
Q.   Safety concern?
 
A.   That’s correct.
 
Q.   Did he respond to you?
 
A.   He opened his eyes.
 
 
Appellant acknowledges that the agreed upon testimony was read to the jury, but urges that it caused
the jury to speculate that there might be other evidence not disclosed to the jury. There was no
objection to the testimony that was requested or read and any concern about the nature of appellant’s
“input” was clarified by the reading of the testimony. We overrule appellant’s sixth issue.

Constitutionality of Statute 
                        In issues seven and eight, appellant asserts that the definition of “controlled
substance” in section 481.002(5) is unconstitutionally vague in violation of the due process
provisions of the United States and Texas constitutions. Tex. Health & Safety Code Ann.
§ 481.002(5) (West Supp. 2005); see U.S. Const. amend. XIV, § 1; Tex. Const. art. I, § 19. He urges
that, because the statute defines a controlled substance to include adulterants and dilutants, the
enforcement of the statute is arbitrary and denies equal protection generally and as to him in
particular. Tex. Health & Safety Code Ann. § 481.002(5). His argument is the same as to both
constitutions.
                        When reviewing the constitutionality of a statute, we presume that the statute is valid
and that the legislature has not acted unreasonably or arbitrarily in enacting it. Ex parte Granviel,
561 S.W.2d 503, 511 (Tex. Crim. App. 1978). The burden is on the party challenging the statute to
establish that it is unconstitutional. Id. The constitutionality of a statute may be challenged for
overbreadth or for vagueness. See, e.g., Village of Hoffman Estates v. Flipside, 455 U.S. 489, 494
(1982); Cain v. State, 855 S.W.2d 714, 717 (Tex. Crim. App. 1993). Because there are no
implications of constitutionally protected conduct here, appellant’s overbreadth challenge must fail. 
See Flipside, 455 U.S. at 494. In a vagueness challenge, we should uphold the challenge only if the
enactment is impermissibly vague in all of its applications. A defendant who engages in some
conduct that is clearly proscribed by the statute cannot complain of its vagueness. Id. at 495; see
also Bynum v. State, 767 S.W.2d 769, 774 (Tex. Crim. App. 1989). Accordingly, when challenging
a statute for vagueness, a defendant must show that the statute as it applies to him in his situation
is unconstitutional. See Bynum, 767 S.W.2d at 774. 
                        When a statute is challenged as unconstitutionally vague, our concern is “premised
on notions of notice and due process.” Cain, 855 S.W.2d at 717. A criminal statute is not vague if
it gives a person of ordinary intelligence a reasonable opportunity to know what conduct is
prohibited and it provides sufficient notice to law enforcement to prevent arbitrary or discriminatory
enforcement. Grayned v. City of Rockford, 408 U.S. 104, 108-09 (1972); State v. Edmond, 933
S.W.2d 120, 125 (Tex. Crim. App. 1996); Long v. State, 931 S.W.2d 285, 287 (Tex. Crim. App.
1996). A statutory provision need not be mathematically precise; it need only give fair warning in
light of common understanding and practices. Grayned, 408 U.S. at 110-11. 
                        In this case, appellant possessed a solution or mixture that contained
methamphetamine and that was used in the process of manufacturing methamphetamine. Although
the percentage of pure methamphetamine contained in the solution was small, the statute clearly
provides that it was illegal to possess a controlled substance and that the aggregate weight of any
mixture or solution would be used to determine the amount of controlled substance possessed. We
hold that appellant has not established that section 481.002(5) is unconstitutionally vague on its face
or as applied to him here.
                        That the controlled substance may include the aggregate weight of adulterants and
dilutants is well established. See Seals v. State, No. PD-0678-04, 2005 Tex. Crim. App. LEXIS
1966, at *5 (Tex. Crim. App. Nov. 16, 2005). Section 481.002(5) defines the term “controlled
substance” to include “the aggregate weight of any mixture, solution, or other substance containing
a controlled substance.” Tex. Health & Safety Code Ann. § 481.002(5). An adulterant or dilutant
is defined as “any material that increases the bulk or quantity of a controlled substance, regardless
of its effect on the chemical activity of the controlled substance.” Tex. Health & Safety Code Ann.
§ 481.002(49). Thus, any substance that is added to or mixed with a controlled substance,
“regardless of when, how, or why that substances was added,” may be included in the aggregate
weight of the controlled substance as an adulterant or dilutant. Seals, 2005 Tex. Crim. App. LEXIS
1966, at *8. The gravamen of the offense is the quantity of the usable drug, not its purity. 
McGlothin v. State, 749 S.W.2d 856, 859-61 (Tex. Crim. App. 1988). That the legislature intended
to include as an adulterant or dilutant any material that increased the bulk or quantity of the
controlled substance is clear. Id. Unlike Seals, in which the defendant challenged whether blood
should be included within the aggregate weight, appellant does not challenge that the substances here
included within the aggregate weight do not come within the definition of adulterants and dilutants. 
See Seals, 2005 Tex. Crim. App. LEXIS 1966, at *16 (Womack, J., concurring) (“There is no
constitutional question in this case, in my view. But the statutory definition may be so inclusive as
to invite constitutional problems.”).
                        Thus, the statute is sufficient to notify law enforcement and to prevent the arbitrary
or discriminatory enforcement of the statute. In addition, because the statute clearly includes the
aggregate weight of adulterants within the definition of controlled substances and the conduct is
clearly proscribed, we find that the statute is not so overbroad or vague as to fail to put a person of
ordinary intelligence on notice as to what conduct is prohibited by the statute. We overrule
appellant’s seventh and eighth issues.

CONCLUSION
                        Because we conclude that (i) the evidence supporting the conviction is legally and
factually sufficient, (ii) the trial court did not err in denying appellant’s challenge for cause as to an
objectionable juror, (iii) the trial court did not allow improperly injected evidence outside the record
in closing argument, and (iv) the challenged statute is not unconstitutionally overbroad or vague, we
affirm the judgment of conviction.
 
 
                                                                        __________________________________________
                                                                        Jan P. Patterson, Justice
Before Justices B. A. Smith, Patterson and Puryear
Affirmed
Filed: January 20, 2006
Do Not Publish